IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

BRADEN ASKUE and LISA ASKUE,
individually and as parents and
natural guardians of ABIGAIL
ASKUE, a minor,

        Plaintiffs,

                            CIVIL ACTION NO.

v.                       1:10-cv-0948-JEC

AURORA CORPORATION OF AMERICA,
AURORA OFFICE EQUIPMENT CO.,
LTD., and MICHILIN PROSPERITY
CO., LTD.,

        Defendants.

## ORDER AND OPINION

This case is before the Court on defendant Michilin Prosperity Co., Ltd.'s Motion to Dismiss [44].[1]  The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that defendant's Motion to Dismiss [44] should be **GRANTED**.

---

    [1]  Defendant Michilin Prosperity Co., Ltd. has also filed a Motion to Dismiss Cross-claims [50].  Per this Court's Order of August 30, 2011 [52], no response to this motion will be due until 14 days after the Court issues this order.

**BACKGROUND**

This is a products liability action involving a paper shredder manufactured by defendant Michilin Prosperity Co., Ltd. ("Michilin") and sold to the Aurora defendants (hereinafter "Aurora"), who distributed the shredder under their name. Plaintiffs, on behalf of their minor daughter, allege that this Aurora AS1000X 10CC cross-cut paper shredder mutilated their daughter's right hand. (2d Am. Compl. [17] at ¶¶ 6-11.) They bring claims, under Georgia law, against defendant Michilin and Aurora for strict liability, breach of warranty, negligence, loss of consortium, and punitive damages.

Defendant Michilin, a Taiwanese corporation with its principal place of business in Taiwan, has moved to dismiss for lack of personal jurisdiction. Briefing on this motion concluded on August 17, 2011, and the motion is before the Court for resolution.

**DISCUSSION**

**I.   APPLICABLE LAW**

On a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff has the burden of establishing a prima facie case of jurisdiction. *See Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006); *Oldfield v. Pueblo de Bahia Lora, S.A.*, 558 F.3d 1210 (11th Cir. 2009). "A prima facie case is established if the plaintiff presents enough evidence to withstand a motion for

2

directed verdict." *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990).

In evaluating plaintiff's case, the district court must accept as true the allegations in the complaint. *Stubbs*, 447 F.3d at 1360. Where the defendant contests the allegations of the complaint through affidavits, "the burden shifts back to the plaintiff to produce evidence supporting personal jurisdiction, unless the defendant's affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction." *Id.* Where the plaintiff's complaint and supporting affidavits and defendant's affidavits conflict, the district court must "construe all reasonable inferences in favor of the plaintiff." *Id.*

A plaintiff who brings state-law claims and asserts personal jurisdiction over a nonresident defendant must surmount two obstacles. The exercise of jurisdiction must first, be appropriate under the particular state's long-arm statute and second, cannot violate the Due process Clause of the Fourteenth Amendment. *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.,* 593 F.3d 1249, 1257 (11th Cir. 2010).

## II.   THE GEORGIA LONG-ARM STATUTE

Defendant Michilin argues that it is not subject to the Georgia long-arm statute and that it further lacks "minimum contacts" with Georgia sufficient to satisfy due process. The Georgia long-arm

3

statute permits the exercise of personal jurisdiction over a nonresident who (1) transacts any business within Georgia; (2) commits a tortious act or omission within Georgia, with an exception for defamation; or (3) commits a tortious injury in this state caused by an act or omission outside of Georgia, if the tortfeasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state.[2]   O.C.G.A. § 9-10-91.

**A.   Sub-Section (1): Transacts Any Business**

The first prong of the Georgia long-arm statute confers personal jurisdiction over a resident who "transacts any business" within Georgia.   O.C.G.A. §9-10-91(1).   Although previous federal jurisprudence viewed the Georgia long-arm statute as co-extensive with the reach of the Due Process Clause, such that federal (and state) courts had frequently ignored the Georgia statute and launched immediately into a due process analysis, the Georgia Supreme Court

---

[2]   Sub-section (4) of the statute provides jurisdiction where a defendant owns, uses, or possesses any real property situated within Georgia.   Plaintiffs admit that defendant Michilin "probably" owns no property in Georgia and does not meet section (4).   (Resp. Br. [45] at 9.)   More importantly, they offer no evidence to contradict defendant Michilin's affidavit averring that it has no real estate in Georgia.

The two final sub-sections of O.C.G.A. § 9-10-91 govern domestic matters not implicated by this litigation.   *See* O.C.G.A. § 9-10-91(5) and (6).

4

has indicated that this approach is wrong. *See Innovative Clinical & Consulting Servs., LLC v. First Nat'l Bank of Ames*, 279 Ga. 672 (2005). That is, "the Georgia long-arm statute does not grant courts in Georgia personal jurisdiction that is coextensive with procedural due process. Instead, the long-arm statute must be read literally. It imposes independent obligations that a plaintiff must establish for the exercise of personal jurisdiction that are distinct from the demands of procedural due process." *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1259-61 (11th Cir. 2010)(explaining *Innovative Clinical* decision).

Thus, at least in theory, a non-resident defendant could engage in conduct that would be sufficient to confer personal jurisdiction under the Due Process Clause, but insufficient to confer this jurisdiction under a more exacting Georgia long-arm statute. In other words, as to sub-section 1 of the statute, Georgia's notion of what it means to transact business in the state could be stricter than the test that would be applied by a federal due process analysis. For this reason, an analysis that looked only to the due process test would be incomplete.

To decipher in what way the Georgia definition of "transacting business" is more onerous, or even different, than the standard that would be imposed on such activity by the Due Process Clause, it is essential that there be some substantive definition of the term

5

"transacts business" in Georgia law.  Without a definition of the term, courts will be unsure of the statute's contours and will be forced, out of necessity, to default back to a due process analysis.[3]

Unfortunately, as the Eleventh Circuit has noted in its exhaustive dissection of the *Innovative Clinical* opinion, "Georgia courts have yet to fully explain" what the "[t]ransacts any business" language means. *Diamond Crystal*, 593 F.3d at 1262.  Given that gap, the Eleventh Circuit has indicated that "unless and until the Georgia courts provide further authoritative guidance, courts in this circuit construing the statute literally will have to delineate the precise contours of the '[t]ransacts any business within this state' requirement...according to the facts of each case."  *Id.* at 1363. The Circuit has cautioned federal courts, however, that in undertaking this obligation, they must:

> resist any temptation to define "[t]ransacts any business" solely or primarily in terms of the "foreseeability" of an impact on the Georgia forum....To do so would once again improperly conflate the long-arm and due process inquiries....[E]ngrafting a "foreseeability" component, which the Georgia General Assembly has not seen fit to include...would amount to just the sort of extension of the long-arm statute beyond its literal terms that the Georgia Supreme Court rejected in *Innovative Clinical.*

---

[3]   Indeed, the *Diamond Crystal* opinion notes that, since *Innovative Clinical*, the Georgia Court of Appeals has issued an opinion interpreting sub-section 1 that appears to continue to collapse the long-arm test into a "minimum contacts" inquiry under the Due Process Clause. *Diamond Crystal*, 593 F.3d at 1260 n.11 (discussing *Aero Toy Store, LLC v. Grieves,* 279 Ga. App. 515 (2006).

*Id.* at 1363 n.15.  Rather, federal courts interpreting the statutory language "must be limited to the bare language of the statute."  *Id.*

Having explained the task, the Eleventh Circuit made the first stab at executing its own directive.  The court noted that, "interpreted literally," the term "transacts any business," requires the defendant to have "purposefully done some act or consummated some transaction in [Georgia]...."  *Id.* at 1264 (citations omitted). Nevertheless, a defendant need not physically enter the state to have transacted business therein, meaning that "intangible" acts, such as mail and telephone calls to Georgia, should be considered.  *Id.*  In the case before the Circuit, the defendant had sent purchase orders to a Georgia manufacturer, had required delivery by customer pickup, had arranged for third parties to pick up in Georgia the product that the parties had purchased, and had promised to pay money into Georgia.  *Id.* at 1265.  The Eleventh Circuit concluded that this conduct constituted the transaction of business within Georgia by the defendant.  Accordingly, the plaintiff had satisfied sub-section 1 of the long-arm statute.

In the present case, however, the defendant did none of the things that gave rise to personal jurisdiction in *Diamond Crystal*. Specifically, as set out in the affidavit of CEO Frank Chang, defendant Michilin is not licensed, authorized, or registered to do business in any state.  (Chang Aff. [44] at ¶ 11.)  It does not, nor

7

has it ever, maintained an office or place of business in Georgia. (*Id.* at ¶ 12.) Similarly, it has never had any employees, including sales persons, representatives, agents or services, located within or conducting business in Georgia. (*Id.* at ¶¶ 13, 19.) Further, defendant Michilin does not do any advertising in Georgia and does not solicit business from Georgia. (*Id.* at ¶ 22.) None of its employees have ever attended a trade show or conducted a meeting in this state either. (*Id.* at ¶ 25.) It has "no knowledge that its products will be sold in Georgia." (*Id.* at ¶ 23.) Finally, defendant had no involvement with distribution or sale of its product once it was delivered to Aurora Corporation of America in California. (*Id.* at ¶ 6.)

Even assuming that plaintiffs presented a prima facie case of personal jurisdiction for defendant Michilin, the defendant has, with the above affidavit, rebutted this inference, thereby shifting the burden to plaintiffs to demonstrate the existence of jurisdiction. Plaintiffs offer no affidavit or other evidence in response, however, and merely argue that "[d]efendant Michilin undoubtedly knew that its products were going to be distributed in Georgia because it sold these products to a United States-based distributor that services Georgia." (Resp. Br. [45] at 5-6.)

Plaintiffs' Second Amended Complaint, however, does not allege that the United States-based distributor actually services Georgia.

8

An argument in a brief is not evidence and the Court cannot speculate about what defendant Michilin knew, did not know, or should have known.  Moreover, even if true, this assertion does not demonstrate that the defendant transacted business in Georgia.  Accordingly, plaintiffs have not shown that defendant Michilin transacted any business in Georgia and has failed to demonstrate jurisdiction under sub-section 1 of the long-arm statute.

**B.    Sub-Sections 2 and 3: Tortious Acts**

Under sub-section 2, a Georgia court may exercise personal jurisdiction over a nonresident who commits a tortious act or omission within Georgia, insofar as the exercise of that personal jurisdiction comports with constitutional due process.  *Innovative Clinical*, 279 Ga. at 674.  No act or omission by defendant Michilin occurred in Georgia.  Only the alleged tortious injury occurred within Georgia.  Under these circumstances, sub-section 2 does not offer a basis for personal jurisdiction.  *See Id.* at 673-74 (affirming requirement that a nonresident "must do certain acts" as delineated by the statute before nonresident is subject to personal jurisdiction in Georgia); *Anderson v. Deas*, 273 Ga. App. 770, 772-73 (2005)("[a]lthough the injurious consequences would have been felt in Georgia, it is undisputed that [defendant] never came to Georgia so as to commit an act here."), *holding undisturbed on remand*, 279 Ga. App. 892 (2006)("We further concluded that jurisdiction was not

9

sustainable under paragraph (2) based on [defendant's] commission of a tortious act within this state.").

Under sub-section 3, a Georgia court may exercise personal jurisdiction over a nonresident who commits a tortious injury in Georgia caused by an act or omission outside Georgia, only if the tortfeasor "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state." *Innovative Clinical, LLC*, 279 Ga. at 674.

Defendant Michilin's affidavit makes clear that it does not regularly conduct or solicit business, engage in any other persistent course of conduct, or derive substantial revenue from goods used or consumed, or services rendered, in Georgia. Plaintiffs offer no evidence to rebut this affidavit, but instead ask the court to speculate that because defendant Michilin's products were purportedly sold in this market, they "undoubtedly derived substantial revenue from the sale of these products" and that "[d]efendant Michilin engaged in a persistent course of conduct in Georgia by engaging a distributor to sell its products in this market." (Resp. Br. [45] at 8.)   These assertions are wholly conclusory and insufficient to sustain a finding of jurisdiction under the long-arm statute.

In short, plaintiff has failed to demonstrate personal jurisdiction under the statute.

10

### III. <u>FEDERAL DUE PROCESS</u>

As the plaintiff has failed to prove the existence of personal jurisdiction under the Georgia long-arm statute, the Court does not need to reach the question whether such jurisdiction, even if it existed, would violate the Due Process Clause of the Fourteenth Amendment. Nevertheless, given the uncertainty of the definition of "transacts business" under Georgia law, the Court will examine the impact of the Clause on this question.

Due process is satisfied "if the non-resident defendant has established 'certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Oldfield v. Pueblo de Bahia Lora, S.A.*, 558 F.3d 1210, 1220 (11th Cir. 2009)(*quoting Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). Once a plaintiff has shown that defendant has "minimum contacts" with the forum, the burden shifts to the defendant to make a "'compelling case' that the exercise of jurisdiction would violate...fair play and substantial justice." *Diamond Crystal Brands, Inc.*, 593 F.3d at 1267.

Although a defendant's minimum contacts may give rise to either "general" or "specific" personal jurisdiction, the parties appear to agree that the latter will determine the outcome here. To assert specific jurisdiction, a defendant's contacts with the forum (1) must

11

be related to the plaintiff's cause of action or have given rise to it, (2) must involve some act by which the defendant purposefully availed itself of the privilege of conducting activities within the forum, and (3) must be of a nature that the defendant should reasonably anticipate being haled into court in the forum. *Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 925 (11th Cir. 2007).

The primary dispute between the parties is whether defendant Michilin, by selling a product that it might have anticipated could enter the stream of commerce in Georgia, purposefully avail[ed] itself of the privilege of conducting activities within the forum." *Id.* Plaintiffs' argument that defendant Michilin is subject to jurisdiction is, in essence, as follows: defendant Michilin made products available for sale in the United States through a California distributor. One of these products ended up in Georgia. Defendant Michilin should have anticipated that this could occur. Therefore, defendant Michilin purposely availed itself of the privilege of conducting activities within the forum, thus invoking the benefits and protections of the laws of the State of Georgia. (Resp. Br. [45] at 12-13.)

Plaintiffs rely on the "stream of commerce" theory of personal jurisdiction, which provides that "[t]he forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the

12

stream of commerce with the expectation that they will be purchased by consumers in the forum State." *Vermeulen v. Renault, U.S.A., Inc.*, 985 F.2d 1534, 1546 (11th Cir. 1993)(citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297-98 (1980)).

The "stream of commerce" theory provides the easier test for a plaintiff to meet.  The Eleventh Circuit has also applied, but not explicitly adopted, a more onerous test: the "stream of commerce plus" analysis, which arose from Justice O'Connor's plurality opinion in *Asahi Metal Indus. Co., Ltd. v. Superior Court of California*, 480 U.S. 102, 110 (1987).  The "stream of commerce plus" test not only requires that the defendant place, in the stream of commerce, a product that ends up in the forum state, but also that the defendant do something more to "purposefully avail itself of the market in the forum State." *Vermeulen*, 985 F.2d at 1547 (citing *Asahi Metal Indus. Co., Ltd. v. Superior Court of California*, 480 US. 102, 110 (1987)).

In *Asahi*, Justice O'Connor explained that additional conduct by the defendant, such as designing the product for the market in the forum state, advertising in the forum state, establishing channels for providing regular advice to customers in the forum state, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum state, may indicate an intent to serve the market and purposefully avail themselves to the forum. *Asahi Metal Indus.*, 480 U.S. at 112.

13

It is unclear which of the two tests the Eleventh Circuit endorses in determining personal jurisdiction as to upstream manufacturers whose products injure downstream consumers. *See Vermeulen*, *supra* (applying "stream of commerce plus" test, but not explicitly adopting it); *Morris v. SSE, Inc.*, 843 F.2d 489, 493 n.5 (11th Cir. 1988)(applying Justice O'Connor's test from *Asahi* and noting that satisfaction of the narrower test articulated by O'Connor satisfies other broader tests articulated in *Asahi*). *But see Ruiz de Molina v. Merritt & Furman Ins. Agency, Inc.*, 207 F.3d 1351, 1357-58 (11th Cir. 2000)(applying "stream of commerce" test and *Calder* effects test). Indeed, courts in this circuit and elsewhere continue to stumble around in search of the proper standard. *See Vermeulen*, 985 F.2d at 1548 n.17 (citing cases which "declined to follow" the plurality in *Asahi* and continue to apply "stream of commerce" analysis).

Defendant argues that the "stream of commerce" test relied upon by plaintiffs is no longer good law after *J. McIntyre Machinery, Ltd. v. Nicastro*, 131 S. Ct. 2780 (2011). *Nicastro* arose from a products liability suit filed in a New Jersey state court. *Id.* at 2786. Plaintiff Nicastro seriously injured his hand while using a metal-shearing machine manufactured by defendant J. McIntyre Machinery, Ltd. *Id.* Although the accident occurred in New Jersey, the machine

14

was manufactured in England where the defendant was incorporated and operated. *Id.*

The New Jersey Supreme Court found the assertion of jurisdiction comported with due process based on three primary facts. First, an independent company agreed to sell the defendant's machines in the United States (although the defendant made no sales beyond the United States distributor and the distributor was not under its control). *Id.* Second, officials for the defendant's company attended annual conventions for the scrap recycling industry to advertise the defendant's machines alongside the distributor. *Nicastro,* 131 S. Ct. at 2786. (These conventions took place in various states, however, but never in New Jersey.) Third, four machines, including the machine that caused the plaintiff's injuries, ended up in New Jersey. *Id.*

The New Jersey Supreme Court also noted that the defendant held patents in the United States and Europe on its recycling technology, and that the United States distributor structured its advertising and sales efforts under the defendant's direction and guidance. *Id.*

The New Jersey Supreme Court held that jurisdiction was proper because the petitioner knew or reasonably should have known "that its products are distributed through a nationwide distribution system that might lead to those products being sold in any of the fifty states" and because the defendant failed to "take some reasonable

15

step to prevent the distribution of its products in this State." *Id.* at 2786.

The Supreme Court reversed, in a 6-3 plurality decision. In reaching this conclusion, Justice Kennedy, writing for four justices, explained that the term "stream of commerce" is nothing more than a metaphor that refers to the movement of goods from manufacturers through distributors to consumers. *Id.* at 2788. According to the plurality opinion, this metaphor, which was relied upon by the New Jersey Supreme Court as a theory for jurisdiction, arose from the unexceptional proposition that placing goods into the marketplace "with the expectation that they will be purchased by consumers with the forum State *[might] indicate purposeful availment*." *Nicastro*, 131 S. Ct. at 2788 (emphasis added). The true inquiry, according to the plurality, is whether the defendant's activities manifested an intention to submit to the power of a sovereign, by purposefully availing itself of the privilege of conducting activities within the forum state, and thereby invoking the benefits and protections of its laws. *Id.* The Court rejected an alternative approach that discards the concept of sovereign authority in favor of considerations of fairness and foreseeability. *Id.* at 2789-90. In essence, Justice Kennedy's plurality opinion adopted the "stream of commerce plus" theory of jurisdiction, taken from Justice O'Connor's view in *Asahi*. *Id.* at 2790 (describing conclusion that "the authority to subject a

16

defendant to judgment depends on purposeful availment" as "consistent with Justice O'Connor's opinion in *Asahi*").

Justice Breyer, joined by Justice Alito, concurred.  He agreed with the plurality that the facts presented were insufficient to demonstrate "purposeful availment," as set forth in prior precedents, but he refused to adopt either the plurality's "seemingly strict no-jurisdiction rule" or the New Jersey Supreme Court's "absolute approach."  *Id.* at 2792-93.  For Justice Breyer, the record before the Court did not show that the British manufacturer "purposefully avail[ed] itself of the privilege of conducting activities within New Jersey, or that it delivered its goods in the stream of commerce with the expectation that they will be purchased by New Jersey users."  *Id.* at 2792 (internal quotations omitted).  In other words, under either past precedent, as Justice Breyer read it, or the more stringent approach adopted by the plurality, asserting jurisdiction over the defendant would violate due process.

Given the Supreme Court's failure to clarify its earlier plurality holding in *Asahi*, this Court must construe the holding of *Nicastro* as "that position taken by those Members who concurred in the judgments on the narrowest grounds."  *Marks v. United States*, 430 U.S. 188, 193 (1977); *United States v. Robison*, 505 F.3d 1208, 1221 (11th Cir. 2007).  The "narrowest grounds" is understood as the "less far-reaching" common ground.  *Robison*, 505 F.3d at 1221.

17

Justice Breyer's opinion purports to rely on existing precedent to reach its conclusion.  Its most narrow holding provides that on the facts presented to the New Jersey Supreme Court, the defendant did not purposefully avail itself of the jurisdiction of New Jersey. *Ainsworth v. Cargotec USA, Inc.*, No. 2:10-CV-236-KS-MTP, 2011 WL 4443626, at *7 (S.D. Miss. Sept. 23, 2011)(describing *Nicastro* as limited in its applicability and "[a]t best, it is applicable to cases presenting the same factual scenario that it does").  *See also Windsor v. Spinner Indus. Co., Ltd.*, ___ F. Supp. 2d ___, No. JKB-10-114, 2011 WL 5005199, at *5 (D. Md. Oct. 20, 2011)(construing *Nicastro* as rejecting the foreseeability standard of personal jurisdiction, but otherwise leaving the legal landscape untouched and applying the Fourth Circuit's post-*Asahi* precedents to resolve the case); *Lindsey v. Cargotec USA, Inc.*, No. 4:09CV-00071-JHM, 2011 WL 4587583, at *7 (W.D. Ky. Sept. 30, 2011)("because...[*Nicastro*] did not conclusively define the breadth and scope of the stream of commerce theory...and given Justice Breyer's decision to rely on current Supreme Court precedents, the Court will continue to adhere to the Sixth Circuit's analysis of purposeful availment").

Assuming that the only inference that one can properly draw from the *Nicastro* holding is that the decision is limited to its own facts, defendant Michilin bears a striking similarity to the defendant in *Nicastro*.  Like defendant J. McIntyre, defendant here

18

sold its product to a distributor in the United States, and no sales were made by defendant beyond that distributor.  Second, as with J. McIntyre, only a small number of machines wound up in the forum state (one here, four by J. McIntyre).  Indeed, defendant had fewer contacts here than did J. McIntyre.  That is, none of defendant Michilin's employees have been alleged to have attended any conferences in Georgia.  In fact, unlike the additional contacts with the United States that J. McIntyre had, there is no indication in the record that defendant Michilin's employees have attended conferences anywhere in the United States.  Defendant Michilin also lacks the two additional contacts with the United States that the New Jersey Supreme Court identified: a United States patent and a United States distributor who structures its advertising and sales efforts under the foreign defendant's direction and guidance.

In sum, whatever test governs foreign nonresident manufacturers whose products enter the State of Georgia and injure its residents, the presents facts, which are materially similar to those of *Nicastro*, do not demonstrate that defendant Michilin "purposeful[ly] avail[ed]" itself of the jurisdiction of the State of Georgia.  *N. Ins. Co. of N.Y. v. Constr. Navale Bordeaux*, No. 11-60462-CV, 2011 WL 2682950, at *5 (S.D. Fla. July 11, 2011)(twenty sales in state over 2.4 years, control over how the independent dealer makes those sales, appearance at six trade shows in Florida, and industry advertising

AO 72A
(Rev.8/82)

were insufficient to demonstrate "something more" required in due process analysis); *Dejana v. Marine Tech., Inc.*, No. 10-CV-4029(JS)(WDW), 2011 WL 4530012, at *6 (E.D.N.Y. Sept. 26, 2011)(no jurisdiction over seller of specialized, expensive racing boats meant to be used on racing circuits that include events in forum where there were no representatives in forum, no boats delivered in forum, and no sales solicitations in forum); *Oticon, Inc. v. Sebotek Hearing Sys., LLC*, ___ F. Supp. 2d ___, No. 08-5489(FLW), 2011 WL 3702423, at *10 (D.N.J. Aug. 22, 2011)("Under *Nicastro*, whether it is five or nine sales by [defendant] of [codefendant's] allegedly infringing products, that is simply too small of a number from which to conclude that [codefendant] purposefully availed itself of the New Jersey market."); *Powell v. Profile Design LLC*, No. 4:10-cv-2644, 2012 WL 149518, at *8 (S.D. Tx. Jan. 18, 2012)(sale of [defective] bicycle stem in California simply does not rise to level of actions purposefully directed at [forum]). *Compare Morris v. SSE, Inc.*, 843 F.2d 489 (11th Cir. 1988)(Justice O'Connor's *Asahi* test satisfied where nonresident defendant repaired products for delivery to forum, advertised in forum based on national trade magazines, and products were hazardous); *Vermeulen*, 985 F.2d at 1550 (personal jurisdiction over foreign state under FSIA consistent with due process where defendant designed the product for the American market, advertised in the United States, and maintained a distribution network); *Brooks &*

20

*Baker, L.L.C. v. Flambeau, Inc.*, No. 2:10-cv-146-TJW-CE, 2011 WL 4591905, at *4 (E.D. Tx. Sept. 30, 2011)(distinguishing *Nicastro* where defendant admitted that it inserted accused products into the stream of commerce with the intention that the products reach a national market, along with many more than just one isolated sale to forum); *DRAM Techs. LLC v. Am. II Grp., Inc.*, No. 1:10-CV-45-TJW, 2011 WL 4591902, at *3 (E.D. Tx. Sept. 30, 2011)(distinguishing *Nicastro* where sophisticated electronics manufacturer was aware that its products would be distributed in the United States, twenty-five models of product were in forum, internet sales provided direct shipping to forum, employees regularly visited several United States-based customers, and formerly had an American affiliate).

Because asserting personal jurisdiction over defendant Michilin would offend due process, defendant Michilin's Motion to Dismiss [44] is also merited on this alternative ground.

<u>**CONCLUSION**</u>

For the foregoing reasons, defendant Michilin's Motion to Dismiss [44] is **GRANTED**. The Aurora defendants shall file their response to defendant Michilin's Motion to Dismiss Cross-claims [50] by **March 26, 2012**. (See Order of Aug. 30, 2011 [52].)

AO 72A
(Rev.8/82)

SO ORDERED, this 12th day of MARCH, 2012.


                              /s/ Julie E. Carnes
                              JULIE E. CARNES
                              CHIEF UNITED STATES DISTRICT JUDGE

22